DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

NOAH STERN (CABN 297476)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7230
    Fax: (415) 436-7234
    Noah.Stern@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>RAUL ACOSTA,<br><br>    Defendant. | CASE NO. 4-20-mj-70642 MAG<br><br>MEMORANDUM IN SUPPORT OF THE UNITED STATES'S MOTION FOR DETENTION<br><br>Date:   June 10, 2020<br>Time:  10:30 a.m.<br>Court:  Honorable Laurel Beeler |

      Raul Acosta is a 29-year-old gang member and five-time convicted felon who has been classified as a highly violent offender under California's risk assessment system. On October 13, 2019, he was arrested after trespassing in a woman's yard at two in the morning with a stolen, loaded Beretta handgun. In connection with the incident, Acosta's parole was revoked and he pleaded guilty to violating California Penal Code § 29900 (possession of a firearm by a person convicted of a particular felony), his fifth adult felony conviction. Acosta received 180-day concurrent sentences on the parole revocation and the felony conviction, and appears to have served approximately half of that time.

      In March 2020, not long after his release from jail, he tampered with his GPS ankle monitor and

absconded from parole. He was pulled over for a traffic stop in early April 2020 and, although he provided a fake name, was arrested on the parole warrant. He also was found to be in possession of methamphetamine. In mid-April he violated his parole again by associating with individuals he was prohibited from associating with. Then, on May 21, 2020, Acosta let his GPS ankle monitor die and he absconded from parole again.

On May 27, 2020, Acosta was charged with one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g), via a criminal complaint for the October 13, 2019 incident. On June 2, 2020, Acosta was arrested on the federal warrant and booked into Santa Rita Jail. According to the Pre-Trial services report, it appears that a state parole warrant remains outstanding.

Acosta's total refusal to be supervised after his release from jail early this year is just a continuation of his total failure on parole since 2017, when he was released after sustaining a robbery conviction for which he was sentenced to five years in prison. Since his release in 2017, Acosta has violated his parole over thirty times with conduct including robbery, possession of a firearm (twice), criminal threats, failure to participate in GPS monitoring, curfew violations, and repeated use of controlled substances. Acosta's refusal to be supervised on state parole, and frequent absconding, demonstrates by a preponderance of the evidence that he is a serious risk of non-appearance and no condition or combination of conditions can reasonably assure his future appearance in court. Moreover, Acosta's violent criminal history, gang ties, and proclivity for carrying dangerous weapons are clear and convincing evidence that he is a danger to the community and no condition or combination of conditions can reasonably assure the safety of the community. Accordingly, the Court, consistent with Pre-Trial services' recommendation, should order Acosta detained pending trial.

## BACKGROUND

### I. OFFENSE CONDUCT

On October 13, 2019 at around 2:00 a.m., Oakland Police Department Officers responded to a residence on International Boulevard in Oakland, California in response to a 9-1-1 call that an individual was trespassing. After gaining access to the locked yard, officers apprehended Acosta, who had lacerations to his arms and chest, as well as scratches all over his body consistent with getting caught in

the barbed wire fence that surrounded the yard.  Acosta was wearing a black shirt that had been ripped in half.

Officers found a loaded Beretta 92FS 9mm handgun, on the ground of the west-side breezeway of the yard.  Immediately next to the firearm was a single shoe.  A piece of blacked ripped shirt was entangled in the barbed wire fence immediately above where the firearm was discovered.  There were also blood stains on the ground.

Officers reviewed surveillance footage from the residence, which showed an individual appearing to be Acosta climb over the residence's fence, carrying what appeared to be a firearm.  Later, the surveillance shows the individual jumping over the fence next to which the firearm was found.  The footage shows the individual get caught on the barbed wire and shows objects fall to the ground.

Acosta was charged in Alameda county for a parole violation and for possession of a firearm by a person convicted of a particular felony, in violation of California Penal Code § 29900.  Acosta pleaded guilty to both on November 19, 2020 and was received 180-day concurrent jail sentences.

## II. CRIMINAL HISTORY

### A. Criminal Convictions.

Acosta has five adult felony convictions, including his state conviction for the instant offense:

- In November 2009, Acosta was convicted of accessory in violation of California Penal Code § 32.  He initially received a sentence of 122 days jail and five years probation, but 92 days were added when his probation was modified in May of 2010, and then his probation was revoked in September 2010 and he received a sixteen month prison sentence.

- In December 2011, Acosta was convicted of attempted second degree robbery and was sentenced to 342 days jail and five years probation.

- In January 2014, Acosta was convicted of second degree robbery and sentenced to five years in prison.

- In August 2018, Acosta was convicted of being a felon in possession of a firearm in violation of California Penal Code § 29800(a)(1).  For this conviction, Acosta received a sixteen month prison sentence.

This all followed violent juvenile conduct.  For example, in 2008, it appears that Acosta received a wardship, probation, and other punishments in connection with a charge for Assault with a Firearm on

a Person, in violation of California Penal Code § 245(a)(1).[1]  Acosta appears to have been arrested for assault with a firearm as a person twice as an adult.  First, in 2009, where that charge was dismissed as part of his plea of guilty to accessory.  Second, in 2010, where Acosta appears to have not been charged by the prosecutor's office because the victim was unavailable or declined to testify.

### B.     Conduct on Parole.

After beings sentenced to five years prison for robbery in 2014, Acosta was released on parole in February 2017.  After his release, Acosta's parole appears to have been formally revoked on six occasions (including the revocation for the instant offense).  These revocations occurred in October 2017, February 2018, November 2018, March 2019, August 2019, and November 2019, with corresponding sentences of 6 months, 135 days, 130 days, 135 days, 135 days, and 180 days being imposed, respectively.

Documenting the extent of Acosta's refusal to be supervised on state parole would take several pages.  In an August 2019 petition for revocation of parole, a parole agent described Acosta's parole adjustment as "a total program failure" given the over 30 violations of parole in the two years of supervision.  The government submits some examples from various parole reports.

*First*, Acosta absconded on parole on numerous occasions.  Since 2017, Acosta appears to have nine parole violations relating to either his GPS device or absconding from parole.  These include the following:

- On February 14, 2018, Acosta failed to charge his GPS device and it shut down, despite numerous warnings the device provides that it needed to be charged.  The day before, Acosta had changed his residence without notifying his parole officer.  When Acosta was arrested on February 14, 2018, he refused to allow parole to search his phone.

- On July 16, 2019, Acosta's parole agent received a master tamper notification for Acosta's GPS device.  The agent attempted to contact Acosta via cell phone but could not.  Shortly afterwards the agent went to Acosta's last known location and found the GPS device with its strap cut.  Acosta could not be found at five prior locations and remained at large until he was arrested on July 30, 2019.  When he was arrested, Acosta provided the officer multiple fake names and dates of birth.

- In March 18, 2020, Acosta's parole agent received a master tamper notification for Acosta's GPS device.  The agent attempted to locate Acosta at his last known location but was unsuccessful.  A warrant was issued and on April 4, 2020, Acosta was pulled over by the Oakland Housing Authority for speeding.  Acosta provided the officer a false name but the officer eventually identified him and arrested him on the parole warrant.  A

---

[1] Acosta's rap sheet lists the disposition of this offense as "other disposition."

quantity of methamphetamine consistent with personal use was found in the vehicle. The government understands that despite the fact the warrant was "no bail," Santa Rita Jail released Acosta due changed practices relating to COVID-19.

- On May 21, 2020, Acosta allowed the battery on his GPS device to die, despite multiple warnings to charge the battery. Law enforcement was unable to locate Acosta until June 2, 2020, when he was arrested on the warrant in the instant case.

*Second*, in addition to absconding from parole, on numerous occasions Acosta has violated parole by, among other things, breaking curfew, refusing to allow the search of his cell phone, associating with gang members, travelling more than fifty miles away, wearing gang clothing, and repeatedly using controlled substances. He has also refused to attend programs made available to him for the purpose of his rehabilitation. For example, in late 2018, Acosta walked away from housing provided to him at Volunteers of America ("VOA") without notifying anyone. Afterwards he was released from a parole violation and given the opportunity to return to VOA. Acosta, however, failed to report. Acosta also failed to report to substance abuse programs. In a petition to revoke Acosta's parole in November 2018, the parole agent concluded that none of the department of parole's programs could address Acosta's behavior, which was unpredictable and a threat to public safety.

*Third*, Acosta has engaged in violent and dangerous conduct while on parole. In July 2017, Acosta appears to have attempted to rob a woman who was selling hot dogs, trying to rip a gold chain from her neck (although the disposition on his parole history sheet states this violation was dismissed). Acosta appears to have violated his parole at least twice by possessing a firearm, first in July 2017 and, second, with respect to the instant offense, where Acosta trespassed late at night at a residence with a loaded firearm. In June 2019, Acosta violated his parole by making criminal threats.

**ARGUMENT**

**I.    LEGAL STANDARDS**

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C.

§ 3142(f)(2)(B). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406. "[T]he Bail Reform Act mandates an [1] individualized evaluation [2] guided by the factors articulated in § 3142(g)." *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible. *Id*. Consideration of factors outside the articulated factors set forth in Section 3142 is also disfavored. *Id*.

The Court must consider four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## II. SECTION 3142(G) FACTORS WEIGH IN FAVOR OF DETENTION

As for the nature and circumstances of the charged offense, under § 3142(g)(1), this factor weighs in favor of detention. Acosta's offense conduct here is very serious. Acosta trespassed into the yard of a residence at around 2 a.m. while carrying a stolen, loaded firearm. The seriousness of the charged offense is reinforced by statutory mandate. Congress passed Section 922(g) to "disarm groups whose members Congress believes are unable or unwilling to conduct themselves in conformity with the responsibilities of citizenship." *United States v. Torres*, 911 F.3d 1253, 1264 (9th Cir. 2019) (internal quotation marks omitted). That statutory goal bears directly on the question of detention here because (as demonstrated by his violent criminal history, which includes multiple instances of unlawful weapon possession) Acosta chooses to live by his own rules, not in "conformity with the responsibilities of citizenship."

As for the weight of the evidence, under § 3142(g)(2), this factor also favors detention because the evidence of Acosta's guilt is overwhelming. Indeed, Acosta has pleaded guilty to possessing the firearm in state court. While this factor is deemed the least important by case law, courts are still

"require[d]" to consider it, and it can help establish dangerousness. *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (finding that "the weight of the evidence clearly and convincingly establishe[d]" a likelihood that the defendant would pose a danger if released). Likewise, overwhelming evidence of Acosta's guilt "makes it more likely that he will flee," particularly in light of the term of imprisonment that Acosta potentially faces here. *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991). The fact that Acosta has already been convicted on related state charges does not change this. For the state conviction, Acosta received a sentence concurrent with the sentence for his parole revocation—180 days. Acosta's applicable sentencing guidelines range appears to be 33 to 41 months, meaning that even if he were to receive a sentence at the bottom of the guidelines range (which is by no means a sure thing given his criminal history), he would face over two additional years custody.

Acosta's history and characteristics, including his criminal history, parole history, and gang membership, considered under §§ 3142(g)(3) and (g)(4), strongly favor detention. Acosta had been convicted of four felonies as an adult prior to his commission of the instant offense. And, just since 2017, Acosta has violated the conditions of his parole over 30 times, including absconding from parole on numerous occasions and providing law enforcement officers fake names and dates of birth. This shows that he is not amendable to pretrial supervision, is a serious risk of nonappearance, and is a danger to the community. Acosta's active membership in a violent street gang and classification as a highly violent offender by the state of California shows that he is a danger to the community. Acosta has been convicted twice of robbery or attempted robbery and has a history of carrying loaded firearms, resulting in convictions in 2018 and 2019. He also has three arrests for assault with a firearm on a person, including one for which there appears to have been some juvenile criminal justice resolution. Despite Acosta's repeated prison sentences, he has refused to stop his criminal behavior, and has apparently made no attempts to change his violent ways.

### III. ACOSTA IS BOTH A FLIGHT RISK AND DANGER TO THE COMMUNITY

As described above, Acosta's history and characteristics, and his conduct in the instant case, demonstrate the significant danger he poses to the community, and the risk of flight he poses if he were to be released. To the extent Acosta argues that the COVID-19 pandemic minimizes the risk he poses,

the COVID-19 pandemic does not meaningfully shift the balance of the Section 3142(g) factors in Acosta's favor.[2]

### A. Acosta is a flight risk.

Section 3142(e) is primarily concerned with reasonably assuring the appearance of the defendant so that the judicial proceedings may proceed. Nothing about the COVID-19 pandemic changes Acosta's incentives to flee. If presented with the opportunity to flee, Acosta's history, particularly the fact that he has repeatedly thwarted his GPS ankle monitor and absconded from parole, strongly indicates that he will do so.

Specifically, Acosta has already absconded from parole twice in the approximately four months since he was release from jail in January. First, he tampered with his GPS ankle monitor and could not be located for multiple weeks. And, when he was located, he gave the officer a fake name. Then, a little over a month later, Acosta let his GPS ankle monitor die and he could not be located until he was arrested on June 2. This is just part of a long history of absconding from parole, tampering with or allowing his ankle monitor to die, failing to comply with curfews, and failing to stay away from other gang members. There is no reason to think that, given this history, Acosta could be supervised by pretrial services and would appear for court.

Acosta's record of conduct demonstrates that he will neither heed this Court's orders nor abide by any conditions of release.

### B. Acosta is a danger to the community.

Nothing about the COVID-19 pandemic reduces Acosta's danger to others. The danger posed to the community by firearms has been well-established. *See, e.g.*, *United States v. Daychild*, 357 F.3d

---

[2] In a written order, United States Magistrate Judge Susan van Keulen rejected a motion for release premised on the emergence of COVID-19, concluding that the existence and spread of COVID-19 did nothing to undermine the Court's previous findings regarding risk of flight and danger to the community. *United States v. Trujillo*, No. 20-cr-00028-EJD-1 (SVK), Dkt. 15 (N.D. Cal.); *see also*, *e.g.*, *United States v. Sanchez*, No. 19-CR-00576-VC (JSC), Dkt. 23 (N.D. Cal.) (oral order denying bail motion premised on COVID-19 concerns); *United States v. Traore*, No. 20-CR-029-VC (JSC), Dkt. 28 (N.D. Cal.) (same); *United States v. Campos*, No. 19-CR-0280-RS (JSC), Dkt. 95 (N.D. Cal.) (same); *but see In the Matter of the Extradition of Alejandro Toledo Manrique*, No. 19-mj-71055-MAG-1 (TSH), Dkt. 115 (granting motion for release premised on COVID-19 concern in extradition proceeding, with different standards for release than under the Bail Reform Act, where defendant was more than 70 years old).

1081, 1100 (9th Cir. 2004) (approving detention on danger prong due to defendant's possession of firearms); *Torres*, 911 F.3d at 1264; *see also* Att'y Gen. Memo. (Apr. 6, 2020) ("COVID-19 presents real risks, but so does allowing violent gang members and child predators to roam free."), available online at https://www.justice.gov/coronavirus.

The violence Acosta has exhibited in the past, including one robbery conviction, one attempted robbery conviction, and an accessory conviction for which the original charges included assault on a person with a firearm, enhance that danger. In addition to that, in the past three years, Acosta appears to have attempted a robbery by trying to rip a gold chain off a woman's throat, and violated his parole by engaging in criminal threats. Indeed, California has classified Acosta a highly violent offender. Acosta continues to arm himself without regard for the criminal penalties facing him and there is no reason to think that if Acosta was released from prison he would not rearm himself. This would be a significant danger to the community and given that California parole has not found a way to mitigate that danger, there is no reason to believe that this Court could fashion conditions that would adequately mitigate it.

The community itself is more vulnerable to the danger posed by Acosta given the COVID-19 pandemic. This is because first responders are focused on mitigating the effects of the COVID-19 outbreak, reducing the ability to prevent and respond to wrongdoing. Indeed, as a district court in Maryland observed, installation of location monitoring tools poses a risk to United States Pretrial Services officers "given the current recommendations regarding implementation of social distancing." *United States v. Martin*, 2020 WL 1274857, Case No. PWG-19-140-13 (D. Md. Mar. 17, 2020). Nevermind the fact that installing location monitoring tools to monitor Acosta would be futile as demonstrated by his past treatment of GPS monitoring.

In the current climate, irresponsible social habits can also endanger the health of the community. The entire state of California is currently ordered to shelter in place, in varying degrees. Such rules, though enforced by peace officers, rely largely on voluntary obedience. A person who ignores such admonitions and rules could increase infection rates, leading to severe illness and death. Acosta has shown an unwillingness or inability to follow rules, and a disregard for the welfare of others. His failure to follow rules poses particular dangers to the community.

Acosta poses a significant danger to the community, and he cannot show that the risk of contracting COVID-19 (a risk that applies in the community as well) makes him any less of a danger. There are no conditions or combination of conditions that reasonably mitigate Acosta's risk of flight or dangerousness to the community and he should be detained pending trial.

## CONCLUSION

For the foregoing reasons and consistent with Pre-Trial services recommendation, the Court should grant the government's motion to detain Acosta pending trial.

DATED: June 9, 2020                      Respectfully submitted,

                                         DAVID L. ANDERSON
                                         United States Attorney


                                         _____/s/_____
                                         NOAH STERN
                                         Assistant United States Attorney